ROBERT J. ROSATI, SBN 112006
robert@erisalg.com
RAQUEL M. BUSANI, SBN 323162
raquel@erisalg.com
6485 N. Palm Avenue, Suite 105
Fresno, California 93704
Telephone: 559-478-4119
Telefax: 559-478-5939

Attorneys for Plaintiff,
LYNNDA HERGENROEDER

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| LYNNDA HERGENROEDER<br><br>                    Plaintiff,<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br><br>                    Defendant. | CASE NO.<br><br>**COMPLAINT**<br><br>**FOR DECLARATORY AND EQUITABLE<br>RELIEF FOR LONG TERM DISABILITY<br>BENEFITS UNDER 29 U.S.C. SECTION<br>1132(a)(1) and (3)** |

Plaintiff, Lynnda Hergenroeder ("Plaintiff" or "Hergenroeder") alleges as follows:

### JURISDICTION

1.     Plaintiff's claims for relief arise under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (3).  Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

### VENUE

2.     Venue is proper in the Eastern District of California because Plaintiff was and is a resident of the City of Clovis, in the County of Fresno, California, when Defendant terminated her long term disability benefits and denied her appeal of that decision.  Therefore, 29 U.S.C.

section 1132(e)(2) provides for venue in this Court.  Intradistrict venue is proper in this Court's Fresno Division.

## PARTIES

3.      Plaintiff is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1000(7), of the Group Long Term Disability Plan for Employees of Amazon.com Services, Inc. ("The Plan") and thereby entitled to receive benefits therefrom. Plaintiff was a beneficiary because she was an employee of Amazon.com Services, Inc., which established The Plan for the benefit of its specified employees.

4.      The Plan is an employee welfare benefit plan organized and operating under the provisions of ERISA, 29 U.S.C. section 1001 et seq.

5.      Defendant Hartford Life and Accident Insurance Company, ("Hartford"), issued Group Policy No. GLT681086 ("The Policy") to Amazon.com Services, Inc.  Hartford, is the insurer and decision maker for The Plan, acted in a fiduciary capacity when it terminated Hergenroeder's benefits and performed the other acts at issue in this action and denied her appeal, is legally liable for providing the benefits sought and for the fiduciary breaches at issue herein.

## FIRST CLAIM FOR RELIEF

6.      The Policy provides long term disability ("LTD") benefits, which benefits potentially could continue until the Hergenroeder's Normal Social Security Retirement Age, which for Hergenroeder is age 67.

7.      The Policy provides, in part, the following relevant terms:

A.      Disability or Disabled

"Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:

1) Your Occupation during the Elimination Period;

2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and

3) after that, Any Occupation.

* * * *

Your Disability must result from:

1) accidental bodily injury;

2) sickness;

3) Mental Illness;

4) Substance Abuse; or

5) pregnancy.

Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled."

B.      Your Occupation

"Your Occupation means "Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location."

C.      Any Occupation

"Any Occupation means any occupation for which You are qualified by education, training or experience, and that has earnings potential greater than the lesser of:

1)      the product of Your Indexed Pre-Disability Earnings and 80%; or

2)      the Maximum Monthly Benefit."

D.      Essential Duty

"Essential Duty means a duty that:

1)      is substantial, not incidental;

2)      is fundamental or inherent to the occupation; and

3)      cannot be reasonably omitted or changed.

Your ability to work the number of hours in Your regularly scheduled workweek is an Essential Duty.  However, working more than 30 hours per week is not an Essential Duty."

8.      The Policy includes state specific requirements for certain states, including residents of California, such as Hergenroeder.  The Policy includes the following provisions, applicable to California claimants only:

"**Eligibility Determination:** How will We determine Your eligibility for benefits?

**We,** and not Your Employer or plan administrator, **have the responsibility to** fairly, **thoroughly,** objectively and timely **investigate,** evaluate and determine **Your eligibility** or Your beneficiaries **for benefits for any claim You** or Your **beneficiaries make on The Policy. We will:**

1) **obtain with Your cooperation and authorization if required by law, only such information that is necessary to evaluate Your claim** and decide whether to accept or deny Your claim for benefits. **We may obtain this information from Your Notice of Claim, submitted proofs of loss, statements, or other materials provided by You or others on Your behalf**; or, at Our expense We may obtain necessary information, or have You physically examined when and as often as We may reasonably require while the claim is pending. In addition, and at Your option and at Your expense, **You may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your choice.** You should provide Us with all information that You want Us to consider regarding Your claim . . . ."

9.      Hergenroeder became disabled under the terms of The Policy effective January 15, 2020.  Hergenroeder is disabled by the combined effects of:

A.      An on-the-job left knee injury suffered on June 26, 2019, for which she was initially conservatively treated, but then underwent surgery on November 22, 2019, and received post-operative physical therapy with no significant change in pain or mobility.

B.      Enthesopathy (disorder of the entetheses, which are connective tissues between bones and tendons of ligaments) of the left hip and trochanteric bursitis (inflammation of the bursa – fluid filled sac near a joint – at the outside – lateral – point of the hip known as the greater trochanter).  These conditions cause pain that is worsened with activities, such as standing, walking, or running.

C.      Right knee pain from non-industrial accidents and injuries, with underlying degenerative joint disease.

D.      Chronic right shoulder pain, apparently secondary to a 2006 motor vehicle accident, for which she has been advised she will need a shoulder replacement.

E.    Fracture of her left wrist, suffered as a result of a fall, subsequent to her industrial injury, resulting in pain and decreased function.

10.    Hergenroeder initially applied for and received short term disability benefits through Amazon's short term disability plan.  By letter dated May 29, 2020, Hartford notified Hergenroeder that it appeared her disability would extend beyond July 14, 2020, the maximum duration of her short term disability benefits, which benefits were approved by Amazon.  Therefore, Hartford would begin investigating her LTD claim.

11.    On July 12, 2020, Hergenroeder answered a Long Term Disability Benefits Questionnaire in which she was asked to briefly describe her work experience for the last 20 years.  She identified Amazon as date employed – 10-18 and she identified International Emblem as dated employed 1997.

12.    On August 18, 2020, Dr. Ronald Castonguay, M.D., examined Hergenroeder for an orthopedic assessment of her right shoulder.  He reported that she has been seen in the past for her shoulder and told that she likely requires shoulder replacement.  She continued to complain of pain, weakness and restricted motion of her right shoulder.  The doctor concluded "This patient definitely has glenohumeral osteoarthritis.  However, I think this is post-traumatic in nature and it has continued to deteriorate over time.  I do not see any evidence whatsoever that this is a work-related injury and this is entirely a pre-existing problem.  As far as the shoulder osteoarthritis, she definitely has shoulder osteoarthritis, and I do think that this is something that needs treatment with a shoulder replacement."

13.    On August 24, 2020, Dr. Peter Newton, M. D., examined Hergenroeder for a "Panel Qualified Medical Examination" as part of her claim for workers' compensation benefits as a result of her left knee injury and issued a report which he signed on September 3, 2020.  The on-the-job injury was to Hergenroeder's left knee; Dr. Newton noted she also had right knee pain apparently as a result of a 2006 motor vehicle accident.

14.    On September 23, 2020, Dr. Newton, provided a QME Supplemental Report.  He concluded that Hergenroeder sustained injury to her left knee on June 26, 2019, and that impairment was all industrial caused.  He included that there is no evidence of industrial injury to

Hergenroeder's right knee and that she has had chronic right knee symptoms dating back to 2016.

15.     On March 12, 2021, Hergenroeder's primary care physician responded to a letter from Hartford and explained "The patient has permanent restrictions per QME Dr. Newton. . .  In my opinion she is able to return to work any time with accommodations (per QME) according to QME she is MMI."

16.     On April 8, 2021, Hartford provided limited records concerning Hergenroeder's left knee injury to and obtained a peer review of those medical records completed by Christopher Krouse, D. O.

17.     By letter date May 17, 2021, Hartford notified Hergenroeder that it had approved her claim for LTD benefits, finding that she qualified for LTD benefits on July 15, 2020, upon the completion of her elimination period.  The letter calculated her gross monthly LTD benefit at $1,645.84, per month.

18.     By letter dated November 24, 2021, Hartford notified Hergenroeder that since her LTD benefits became effective July 15, 2020, effective July 15, 2022, to be considered disabled she must meet the "any occupation" definition of disability in of The Policy.

19.     On April 12, 2022, Hergenroeder submitted a Claimant Questionnaire and a Work and Educational History form which asked her to list her most recent employer and all jobs for the past 15 years.  She listed only Amazon from 2018-2019.

20.     On April 27, 2022, Keith W. Harvie, D.O., prepared a peer/medical record review on behalf of Hartford.

21.     On May 24, 2022, Hartford's Darin Yous completed a "Test Change Recommendation," in which he, noted, in part, that Hergenroeder's employment history was: "2018-2019 Amazon, Title: Slam Operator; 1997 International Emblem, Title: Supervisor of Office."

22.     On May 24, 2022, Hartford's Daniel V. Turner provided an Employability Analysis Report, in part, based on Dr. Harvie's report, see Paragraph 20, in which Mr. Turner wrote that Hergenroeder's work history included work as a fulfillment associate for Amazon from 10/10/2018 to 01/15/2020 and also falsely wrote that she worked from 1997 – 2018 at

International Emblem as a supervisor of office, production and shipping, when she only held that job for one year in 1997. In his report, Mr. Turner concluded that Hergenroeder could perform the following occupations: (1) Laborer, Stores; (2) Shipping and receiving Clerk; (3) Shipping Checker; (4) Shipping-and-Receiving Supervisor; (5) Supervisor II; and Supervisor, Word Processing.

23.    Hartford calculated Hergenroeder's Indexed Pre-Disability Earnings to be $2,907.64, as of January 2, 2022.

24.    By letter dated May 27, 2022, signed by Darin Yous, Hartford notified Hergenroeder that based on a review of her records by Dr. Keith Harvie, see Paragraph 20, that there was no diagnosis that is limiting her functionality and the medical information on file does not support ongoing disability from her own occupation as a fulfillment associate nor any occupation beyond May 25, 2022. The letter also asserts that Hergenroeder's work history includes one year as a fulfillment associate and falsely asserts she had 21 years as an office supervisor in production and shipping. Mr. Yous knew that was not true. See Paragraph 21. The letter notes that Hartford prepared an employability analysis which showed various occupations within her physical capabilities. The letter invited Hergenroeder to appeal.

25.    Hergenroeder submitted a timely appeal of the termination of her LTD benefits on June 21, 2022. By letter dated July 12, 2022, Hartford acknowledged receipt of Hergenroeder's appeal. Thereafter, Hergenroeder supplemented her appeal with additional medical records.

26.    On August 8, 2022, Hergenroeder saw Meghan Kroll concerning a left wrist fracture as a result of a trip-and-fall.

27.    Hergenroeder provided an office visit note dated August 10, 2022, concerning an evaluation of chronic right shoulder pain.

28.    On September 16, 2022, Dr. Justin Yang provided Hartford with a medical file review concerning Hergenroeder.

29.    On September 20, 2022, Hartford's Daniel V. Turner provided an Employability Analysis – Addendum, based on Dr. Yang's report, Paragraph 28. He concluded that Hergenroeder could work as a: (1) Assignment Clerk; (2) Benefits Clerk II; (3) Insurance Clerk;

(4) Procurement Clerk; (5) Receptionist; (6) Shipping-and-Receiving Supervisor; (7) Shipping-Order Clerk; (8) Stock Supervisor; (9) Supervisor, Word Processing.  All of these occupations have a Specific Vocational Preparation requirement of 4, 5 or 6.

30.    By letter dated September 21, 2022, Hartford provided Hergenroeder with the reports from Dr. Yang and an Employability Analysis Report.

31.    By letter dated October 13, 2022, Hartford denied in part and granted in part Hergenroeder's appeal of the termination of her LTD benefits.  The letter relied upon the records review by Dr. Justin Yang and  the Employability Analysis Addendum by Mr. Turner.  Based on Dr. Yang's opinion, Hartford now concluded that Hergenroeder continued to be prevented from performing the duties of her own occupation as a fulfillment associate and therefore provided additional benefits through July 14, 2022, but also concluded that as of July 15, 2022, she was capable of performing the other occupations specified by Daniel V. Turner in his September 20, 2022, Addendum, summarized in Paragraph 29.

32.    Review is *de novo* because discretionary clauses are banned in California by California Insurance Code §11010.6, and The Policy does not reserve discretion.

33.    Hergenroeder performed all conditions precedent required to be performed by her under the terms of The Policy and the requirements of ERISA.

34.    ERISA section 503, 29 U.S.C. section 1133 provides:

"In accordance with regulations of the Secretary, every employee

benefit plan shall–

(1)    provide adequate notice in writing to any participant, beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial, written in a manner calculated to be understood by the participant, and

(2)    afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

35.    Defendant was required to provide Plaintiff a full and fair review of her claim for benefits pursuant to 29 U.S.C.  §1133 and its implementing Regulations.  Specifically:

A.    29 U.S.C. §1133 mandates that, in accordance with the Regulations of the

Secretary of Labor, every employee benefit plan, including defendant herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

B.    The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133. These Regulations are set forth in 29 C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

i.    Such procedures comply with the specifications of the Regulations.

ii.    The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

iii.    Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the

specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

   iv.  The Regulations further provide: "In the case of a plan providing disability benefits, the plan must ensure that all claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision. Accordingly, decisions regarding hiring, compensation, termination, promotion, or other similar matters with respect to any individual (such as a claims adjudicator or medical or vocational expert) must not be made based upon the likelihood that the individual will support the denial of benefits."

   v.  Defendant is required to provide a full and fair review of any adverse determination which includes:

     a.  That a claimant shall be provided, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits.

     b.  A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such statement was relied upon

in making the benefit determination.

c.      The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

d.      The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

e.      The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

f.      The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

g.      The Regulations further provide that before a plan can issue an adverse benefit determination on review of a disability benefit claim, the plan administrator shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination in connection with the claim as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review

is required to be provided to give the claimant a reasonable opportunity to respond prior to that date.

        h.      The Regulations further provide that before the plan can issue an adverse benefit determination on review on a disability benefits claim based on a new or additional rationale, the plan administrator "shall provide the claimant, free of charge, with the rationale," and must do so sufficiently in advance of the date on which notice of adverse benefit determination on review is required to be provided to give the claimant a reasonable opportunity to respond prior to that date.

        i.       The Regulations further require that such adverse decision include discussion of the decision, including an explanation of the basis for disagreeing with or not following:

        *      The views presented by the claimant to the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant;

        *      The views of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination; and

        *      A disability determination regarding the claimant presented by the claimant to the plan made by the Social Security Administration.

      36.     Hartford denied Hergenroeder a full and fair review of her claim for benefits and thereby prevented the proper development of the Administrative Record in this matter by: (1) not providing a description of any additional material or information necessary for Hergenroeder to perfect her claim and an explanation of why such material is necessary in its May 27, 2022, letter; and (2) failing to provide Hergenroeder with the new or additional rationales it relied upon for its adverse benefit determination on appeal.  Consequently, Hergenroeder is entitled to an

appropriate remedy consisting of either: (1) the right to offer new material and information to prefect her claim; and (2) preventing Hartford from relying upon the new and additional rationales Hartford relied upon on review; and/or (3) permitting Hergenroeder to offer additional evidence to respond to those new and additional rationales.

37.    Hergenroeder is informed and believes that Harford does not have claims procedures which contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions had been applied consistently with respect to similarly situated claimants because when terminating Hergenroeder' s LTD benefits and denying her appeal of that termination, Hartford did not apply the terms set forth in The Policy to Hergenroeder's claim and relied upon Mr. Turner's employability reports which Hartford knew to be based on a false summary of Hergenroeder's work experience, and are not reliable, not credible, and not supported by the facts.  Decisions regarding hiring, compensation, etc., "or other similar matters" with respect to Hartford's vocational experts, including Daniel V. Turner, are made based upon the likelihood that Hartford vocational experts will support the denial of benefits because they are required to utilize improper standards and criteria.

A.    As of December 2018, Hartford utilized what it called a "Employability Analysis Training Manual" and required its vocational case managers to comply with its standards.

B.    Hergenroeder is informed and believes and thereon alleges that Hartford continues to utilize the Employability Analysis Training Manual when completing an Employability Analysis Report.

C.    Hartford's Employability Analysis Training Manual is not a vocational rehabilitation training manual.  It does not cover the vocational rehabilitation academic discipline and its standard applications, including forensic vocational rehabilitation.

D.    Hartford does utilizes the concept of specific vocational preparation (SVP).  The levels on the SVP scale are mutually exclusive and do not overlap.  SVP is the time preparation for each described occupation.  And SVP of 4 requires over three

months up to and including six months of preparation. And SVP of 5 requires over six months up to and including one year preparation. An SVP of 6 requires over one year and up to and including two years of preparation.

      E.    Hartford's vocational personnel commonly use the median wage to determine earning potential even when the claimant has no prior experience in the occupation. However, the 10th-25th percentile levels represent entry-level wages for an individual without experience in a new occupation, meaning the median wage would not reflect a person's entry level earnings in a new occupation.

      F.    It is an industry standard which Hartford formerly followed that relevant work history for determining that a person's transferable skills is limited to 15 years.

      G.    Hergenroeder lacks transferable skills to perform any of the occupations identified by Daniel V. Turner in his September 20, 2022, Employability Analysis – Addendum, summarized in Paragraph 29 and relied upon in Hartford's October 13, 2022, appeal denial, summarized in Paragraph 31, and cannot earn the wages specified in those that the report or that letter.

38.    Daniel V. Turner's reports are false and his opinions and conclusions in his reports are unreliable, invalid, and contrary to the known facts. Nonetheless, in its October 13, 2022, appeal denial letter, Hartford explicitly relied upon Mr. Turner's reports and opinions to deny Hergenroeder's LTD benefits. Hartford knowingly relied upon Daniel T. Turner's Employability Analysis reports, Complaint, ⁋ 22 and ⁋ 29, which it knew to be materially false and thus unreliable, in order to improperly deny Hergenroeder additional benefits.

39.    Hartford's termination of Plaintiff's LTD benefits was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence, and a violation of the terms of The Policy:

      A.    Defendant did not provide Hergenroeder a full and fair review of her claim for benefits and violated applicable claims Regulations.

      B.    Hergenroeder is, and all relevant times has been, disabled under the terms of The Policy and therefore entitled to continued LTD benefits from Hartford.

40.    In this action, Hartford is limited to the specific reason or reasons it stated in its letters of May 27, 2022, see Paragraph 24, and October 13, 2022, see Paragraph 33, and may not raise new or different rationales it did not raise during the administrative process.

41.    Hergenroeder has exhausted all internal remedies required by the terms of The Policy and by the terms of ERISA.

42.    An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to whether Plaintiff is entitled to additional LTD benefits under The Policy.

43.    Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Defendant is obligated to pay her LTD benefits under The Policy, retroactive to the first day her benefits were terminated, for as long as she is entitled to receive LTD benefits under the terms of The Policy.

44.    A judicial determination of these issues is necessary and appropriate this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

45.    As a proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which he is entitled under the terms of The Policy.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

## SECOND CLAIM FOR RELIEF

(For Declaratory Relief or Other Appropriate Equitable Relief)

46.    Plaintiff incorporates by reference paragraphs 1 through 45, inclusive, of this Complaint.

47.    29 U.S.C. §1132(a)(3) authorizes a participant or beneficiary of an ERISA plan, such as Hergenroeder, to bring a civil action to enjoin any act or practice which violates any provision of subchapter 1, 29 U.S.C. §§1001 – 1191, or the terms of the plan, or to obtain other appropriate equitable relief to address such violations or to enforce any provisions of subchapter

1 or the terms of the plan.

48.    Hartford acted in a fiduciary capacity when it investigated and decided to terminate Hergenroeder's LTD benefits and when it investigated and decided to deny, in part, Hergenroeder's appeal of that termination.

49.    As a fiduciary, Hartford was obligated to discharge its duties with respect to The Plan solely in the interest of its participants and their beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and to defray reasonable expenses of administrating the plan; to do so with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and to do so in accordance with the documents and instruments regarding the plan insofar as such documents and instruments are consistent with the provisions of the relevant subchapters of ERISA.

50.    In the course of investigating and deciding Hergenroeder's claim and appeal:

A.    Hartford failed to act solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defray reasonable expenses of administering The Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, as much more full alleged in Paragraphs 34-39.

B.    Hartford failed to discharge its duties with respect to The Plan solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits to the participants and their beneficiaries and defray any reasonable expenses of administering the plan with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, as much more full alleged in Paragraphs 34-39.

51.    In the course of investigating and deciding Hergenroeder's claim and appeal, Hartford engaged in acts and practices in violation of ERISA subchapter 1 as follows: Hartford failed to provide a full and fair review as required because it did not comply with 29 C.F.R. §2560.503-1, as more fully alleged in Paragraph 36 herein.

52.    Therefore, Hartford should be equitably precluded from relying upon, referencing, or providing to others, Daniel V. Turner's false, unreliable, not credible, and not supported by the facts May 24, 2022 and September 20, 2022, Employability Analyses in future claims decisions involving Hergenroeder's claim for LTD benefits under The Policy and should be ordered: to notate in its claim file concerning Hergenroeder that those reports by Daniel V. Turner concerning Lynnda Hergenroeder are: (1) false; (2) unreliable, not credible and not supported by the facts; (3) are not to be relied upon in future decisions or evaluations concerning Lynnda Hergenroeder's claim for LTD benefits; (4) not to be shared or disclosed with third parties; and (5) if subpoenaed by or required to be produced to third parties, including the Social Security Administration, this Note is to be attached to said report at the beginning and end of said report.

53.    Hergenroeder is informed and believes and thereon alleges that as a matter of custom and practice Hartford continues to engage in the acts and practices alleged in Paragraphs 34-39.

54.    Hergenroeder is potentially entitled to LTD benefits from Hartford until her normal Social Security Retirement age of 67.  Unless Hartford is equitably precluded from engaging in the acts and practices described in Paragraphs 34-39, and unless Hergenroeder is provided other appropriate equitable relief, as sought herein, Hartford will continue to engage in the acts and practices described in Paragraphs 34-39, with reference to Hergenroeder's claim once her benefits are reinstated.

### THIRD CLAIM FOR RELIEF

55.    Plaintiff incorporates by reference Paragraphs 1 through 45, inclusive, of this Complaint.

56.    29 U. S. C. §1132(a)(1)(B) permits a participant or beneficiary of an ERISA plan, such as Hergenroeder, to bring a civil action "to clarify his rights to future benefits under the

terms of the plan."

57.     Hergenroeder brings this claim to clarify her rights to future benefits –specifically concerning the monthly amount of said benefits – under the terms of The Plan.

58.     The Policy provides: (1) "Other Income Benefits" are to be deducted from the claimant's monthly LTD benefit; (2) "Other Income Benefits" are those provided to the claimant or her family as a result of the period of Disability for which the claimant is claiming benefits under The Policy; (3) for which the claimant is eligible or that are paid to the claimant or her family; (4) which includes disability benefits under the Unites States Social Security Act; and (5) Hartford requires proof that the claimant and her dependents have applied for all Other Income Benefits which are available.

59.     Hergenroeder has no dependents and therefore no family member is eligible for "Other Income Benefits."

60.     Hergenroeder is not eligible for Social Security Disability benefits because due to her age as of the date she stopped working (60) and her lack of requisite number of quarters of employment participation in the Social Security system, she does not qualify for SSDI benefits, and she is not eligible for any other "Other Income Benefits."

61.     Therefore, there are no "Other Income Benefits" which can be used to reduce Hergenroeder's LTD benefit, and consequently her monthly LTD benefit is $1,645.84, per month for each month beginning July 15, 2022.

WHEREFORE, Plaintiff prays judgment as follows:

1.     For declaratory judgment against Hartford ordering it to pay to Hergenroeder LTD benefits from July 15, 2022, and continuing until and unless she is determined to no longer be entitled to such benefits under The Policy.

2.     For declaratory judgment or other appropriate equitable relief pursuant to 29 U.S.C. §1132(a)(3), as requested in Paragraph 52 of this Complaint.

3.     For declaratory judgment that, since Hergenroeder is not eligible for any "Other Income Benefits" and has no dependents, her monthly LTD benefit effective the reinstatement of her LTD benefits for the period beginning July 15, 2022, is $1,645.84, per month.

4.    For an order, as requested in Paragraphs 36 and 37, of this Complaint:

A.    Preventing Hartford from relying upon the new and additional rationales it relied upon in its October 13, 2022, adverse determination on review to which it did not provide Hergenroeder a reasonable opportunity to respond prior to that adverse benefit determination; and/or permitting Hergenroeder to offer additional evidence to respond to those new and additional rationales.

B.    Permitting Hergenroeder to offer additional evidence that Hartford's vocational experts including Daniel v. Turner, are required to utilize improper standards and criteria as a condition of their employment by Hartford and thus that hiring, compensation, etc., of such employees are made based on the likelihood that their reports will support the denial of benefits.

5.    For attorney's fees incurred in this action.

6.    For costs of suit incurred herein.

7.    For prejudgment interest on unpaid benefits.

8.    For such other and further relief as the Court deems just and proper.

Dated: March 21, 2023

_/s/ Robert J. Rosati_____
ROBERT J. ROSATI,
Attorney for Plaintiff, Lynnda Hergenroeder